United States District Court
Southern District of Texas
**ENTERED**
July 16, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID COCHRAN, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-1451 |
| | § | |
| JOHNSON & JOHNSON, *et al.*, | § | |
|    Defendants. | § | |

## **MEMORANDUM AND ORDER**

This product liability case is before the Court on the Motion for Remand [Doc. # 6] filed by Plaintiff David Cochran. Plaintiff seeks remand because (1) the removal was untimely, (2) the Court lacks subject matter jurisdiction; (3) if there is jurisdiction, mandatory abstention applies; or (4) if mandatory abstention does not apply, equitable considerations warrant remand. Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively, "J&J") filed an Opposition [Doc. # 13], arguing that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) because the lawsuit is "related-to" the bankruptcy case filed by a former co-defendant. J&J argues also that removal was timely and that abstention is not appropriate.

The Court has carefully reviewed the full record and the applicable legal authorities. Based on that review, the Court concludes that it lacks subject matter

jurisdiction over this dispute.[1] As a result, the Court **grants** the Motion for Remand and **remands** this case to the 11th Judicial District Court of Harris County, Texas.

## I.     BACKGROUND

Plaintiff suffers from malignant mesothelioma. Plaintiff alleges that this cancer was caused by his exposure to asbestos in talc used in J&J's baby powder and other companies' talcum powders. Imerys Talc America, Inc. ("Imerys") supplied talc for J&J's baby powder.

On December 10, 2018, Plaintiff filed this lawsuit against J&J, Imerys, and others in the County Court at Law for Dallas County, Texas. On January 3, 2019, the case was transferred to the multidistrict litigation case, *In re: Asbestos Litigation*, Cause No. 2019-00401, in the 11th Judicial District Court of Harris County, Texas.

On February 13, 2019, Imerys filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Delaware. On February 15, 2019, Imerys was dismissed as a defendant in Plaintiff's lawsuit.

On April 19, 2019, J&J filed a Notice of Removal [Doc. # 1]. J&J asserted in the Notice of Removal that the case was removable pursuant to 28 U.S.C. § 1452 as

---

[1] Because the Court lacks subject matter jurisdiction, it need not address whether the removal was timely or whether abstention is required or otherwise appropriate.

related to the Imerys bankruptcy case. Plaintiff filed a timely Motion to Remand, which has been briefed and is ripe for decision.

## II. STANDARD FOR MOTION TO REMAND

The United States Supreme Court has "often explained that '[f]ederal courts are courts of limited jurisdiction.'" *Home Depot U.S.A., Inc. v. Johnson*, __ U.S. __, 139 S. Ct. 1743, 1745 (May 28, 2019) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *Rasul v. Bush*, 542 U.S. 466, 489 (2004); *Gonzalez v. Limon*, 926 F.3d 186, 188 (5th Cir. 2019). "'They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.'" *Rasul*, 542 U.S. at 489 (quoting *Kokkonen*, 511 U.S. at 377); *Gonzalez*, 926 F.3d at 188. The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Id.* (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)); *Settlement Funding, L.L.C. v. Rapid Settlements, Limited*, 851 F.3d 530, 537 (5th Cir. 2017).

Title 28, United States Code, § 1452 allows removal of claims where federal jurisdiction arises under 28 U.S.C. § 1334. *See* 28 U.S.C. § 1452(a); *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007). Section 1334(b) grants federal jurisdiction over proceedings that are "related to" cases arising under Title 11, the

Bankruptcy Code. *See* 28 U.S.C. § 1334(b); *In re TXNB Internal Case*, 483 F.3d at 298. The Fifth Circuit reads "this jurisdictional grant broadly, stating that the test for whether a proceeding properly invokes federal 'related to' jurisdiction is whether the outcome of the proceeding could conceivably affect the estate being administered in bankruptcy." *Id.* (citing *Arnold v. Garlock, Inc.*, 278 F.3d 426, 434 (5th Cir. 2001)). "Certainty is unnecessary; an action is 'related to' bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate." *Id.* (citing *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995)).

### III.  ANALYSIS

J&J argues that Plaintiff's claims against it are related to the Imerys bankruptcy case because (1) Imerys is contractually obligated to indemnify J&J for its liability to Plaintiff and for defense costs J&J incurs in Plaintiff's lawsuit; (2) there is "shared insurance between J&J and [Imerys] which threatens to deplete the pool of assets in the estate available for creditors"; and (3) there exists a unity of identity between Imerys and J&J.

#### A.  Contractual Indemnity

Contractual indemnity rights can create related-to jurisdiction under § 1334(b) even where those rights have not yet accrued. *See Lone Star Fund V (U.S.), L.P. v.*

*Barclays Bank PLC*, 594 F.3d 383, 386-87 (5th Cir. 2010) (citing *In re Stonebridge Techs., Inc.*, 430 F.3d 260, 266 (5th Cir. 2005)). J&J argues that Imerys is contractually obligated to indemnify it for liability and defense costs in connection with Plaintiff's lawsuit. J&J cites the January 6, 1989 Talc Supply Agreement ("1989 Agreement") and the April 15, 2001 Supply Agreement ("2001 Agreement") as the sources of Imerys's contractual indemnification obligations. *See* Opposition [Doc. # 13], p. 14. However, the language in the Agreements fails to support J&J's argument for contractual indemnity.

The 1989 Agreement imposes an indemnity obligations on Imerys.[2] Specifically, Imerys agrees in the 1989 Agreement to indemnify J&J "from and against all liabilities arising out of any violation by [Imerys] of any law, ordinance, regulation or rule or the order of any court or administrative agency . . .." *See* 1989 Agreement [Doc. # 9-1], § 10. Imerys's indemnification obligation under the 1989 Agreement is limited, however, and Imerys affirmatively does "***not*** indemnify [J&J] for any such liabilities to the extent that such liabilities arise from: (i) the acts or omissions of [J&J]; or (ii) the acts or omissions of [Imerys] which were directed by [J&J]." *See id.* (emphasis added). Plaintiff asserts claims against J&J in this lawsuit

---

[2]  For simplicity, the Court will refer to Imerys's predecessors, the signatories of the relevant Agreements, as "Imerys" when discussing the Agreements.

solely based on the acts or omissions of J&J and, therefore, are not claims for which Imerys agreed to indemnify J&J under the 1989 Agreement.

The 2001 Agreement imposes an obligation on Imerys to indemnify J&J "for any cost, loss, damage or expense suffered" by J&J arising from either (A) the talc not meeting J&J's specifications or (B) Imerys failing to sample and test the talc as required by the 2001 Agreement. *See* 2001 Agreement [Doc. # 9-1], § 7(a)(i). Plaintiff's claims against J&J do not arise out of Imerys delivering non-conforming talc or its failure to sample and test the talc as required by the 2001 Agreement. Therefore, Plaintiff's claims against J&J in this lawsuit do not implicate contractual indemnification obligations of Debtor Imerys under the 2001 Agreement.

The 2001 Agreement further imposes an obligation on Imerys, similar to the obligation in the 1989 Agreement, to indemnify J&J "from and against all liabilities arising out of any violation by [Imerys] of any law, ordinance, regulation or rule or the order of any court or administrative agency . . . ." *See* 2001 Agreement [Doc. # 9-1], § 7(a)(iv). Imerys's indemnification obligation under the 2001 Agreement is also similarly limited, with the 2001 Agreement providing specifically that Imerys does "***not*** indemnify [J&J] for any such liabilities to the extent that such liabilities arise from: (i) the acts or omissions of [J&J]; or (ii) the acts or omissions of [Imerys] which were directed by [J&J]." *See id.* (emphasis added). As noted above, Plaintiff's claims

against J&J in this lawsuit are based on the acts or omissions of J&J. Therefore, Plaintiff's claims are not ones for which Imerys provides contractual indemnity to J&J under the 2001 Agreement.

Plaintiff is suing J&J in this lawsuit for selling baby powder that caused cancer. Plaintiff's allegations are based on J&J's own alleged acts and omissions. Neither the 1989 Agreement nor the 2001 Agreement imposes contractual indemnification on Imerys for liability and defense costs arising from the claims asserted by Plaintiff against J&J in this lawsuit. Indeed, the two Agreements provide specifically that Imerys does ***not*** indemnify J&J for such claims. As a result, there is no "related-to" jurisdiction under § 1334(b) based on a contractual indemnity obligation.

### B. Shared Insurance

J&J argues that "related-to" jurisdiction also exists because it and Imerys have shared insurance. In support of this argument, J&J states that it has "insurance coverage for talc litigation through Middlesex Assurance Company Limited, a wholly owned subsidiary of Johnson & Johnson . . .." *See* Opposition, p. 12 n.12. The only insurance policy provided by J&J in response to the Motion to Remand, however, is a policy issued by Aetna Casualty and Surety Company ("Aetna Policy"). The "Persons Insured" section of the Aetna Policy identifies J&J and its affiliates as insureds, as well as its officers, directors, stockholders or employees while acting on

J&J's behalf.  *See* Aetna Policy, Section II(a) and (b).  The "Persons Insured" section provides further that a "Vendor" is an insured "but only with respect to Bodily Injury or Property Damage arising out of the distribution or sale in the regular course of the Vendor's business of [J&J's] Products . . .."  *See id.*, Section II(c).  Imerys does not distribute or sell J&J's products in the regular course of its business.  Therefore, J&J has not shown that the Aetna Policy provides mutual insurance for both J&J and Imerys.

There is nothing in the record to establish that J&J and Imerys have shared insurance.  J&J cites to Imerys's representation to the Bankruptcy Court that it has a right to "seek proceeds" from various insurance policies issued to J&J and its subsidiaries.  *See* Opposition, p. 14.  That Imerys ***claims*** to have a right ***to seek*** proceeds from J&J's insurance does not demonstrate shared insurance for purposes of "related-to" jurisdiction under § 1334(b).

### C.    Unity of Identity

J&J argues that there exists a "unity of identity" between itself and Imerys that creates "related-to" jurisdiction for purposes of § 1334(b).  *See* Opposition, pp. 14-15 (citing *Arnold v. Garlock, Inc.*, 278 F.3d 426 (5th Cir. 2001)).  In *Garlock*, the Fifth Circuit noted that the Sixth Circuit had found "related-to" jurisdiction where "each of the co-defendants was closely involved in using the same material, originating with

the debtor, to make the same, singular product, sold to the same market and incurring substantially similar injuries." *Garlock*, 278 F.3d at 440 (citing *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996)).

J&J argues that the various talc-related claims arise out of a single type of product, then admits there are "two products total." *See id.* at 15. J&J asserts that the talc is supplied exclusively by Imerys, but Plaintiff counters that Imerys has not always been J&J's talc supplier. Neither party presents evidence to support these statements. J&J states that the products are "sold to a uniform market of consumers" but does not present evidence that the market for its powders is any market other than all adult consumers. J&J has simply quoted the language from *Garlock* and asserted, with no supporting evidence, that the same "unity of identity" exists in this case. J&J's conclusory, unsupported argument regarding "unity of identity" is unpersuasive.

Plaintiff asserts claims against J&J that are based on J&J's own alleged acts and omissions. Plaintiff does not assert any claims against Imerys or its bankruptcy estate. Imerys is no longer a defendant in this case. J&J has failed to demonstrate that it shares a unity of identity with Imerys such that the two companies share the same interest. The *Garlock* unity of identity basis for § 1334(b) jurisdiction does not exist in this case.

### D. Conclusion

This lawsuit involves a non-debtor suing non-debtors in connection with a dispute that, based on Plaintiff's complaint and the evidence of record, does not involve the debtor's bankruptcy estate. J&J has not shown that the debtor has any contractual indemnity obligations that would apply to Plaintiff's claims in this lawsuit. J&J has not presented evidence of any insurance policies under which it and Imerys are both insureds. There is no evidence that establishes that J&J and Imerys have a unity of identity that would support "related-to" jurisdiction under § 1334(b). Therefore, absent subject matter jurisdiction, the case must be remanded to the Texas state court from which it was removed.

## IV. CONCLUSION AND ORDER

Based on the foregoing, Plaintiff's lawsuit against J&J is not related to the pending Imerys bankruptcy case for purposes of 28 U.S.C. § 1334(b). As a result, this Court lacks federal subject matter jurisdiction over the lawsuit, and it is hereby

**ORDERED** that Plaintiff's Motion for Remand [Doc. # 6] is **GRANTED**. The Court will remand this case to the 11th Judicial District Court of Harris County, Texas, by separate order.

SIGNED at Houston, Texas, this 16th day of **July, 2019**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE